IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| DURWYN TALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14–cv–0948–MJR–SCW |
| | ) | |
| JOHN TROST, | ) | |
| KIMBERLY BUTLER, | ) | |
| ZACHARY FITZGERALD, | ) | |
| JACQUELINE A. LASHBROOK, and | ) | |
| BRIAN MINER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

This § 1983 civil rights case stems from the *pro se* Plaintiff's time at Menard Correctional Center in the Illinois Department of Corrections ("IDOC"). Plaintiff sued myriad officials, including several "John / Jane Doe" Defendants, on several theories. The unnamed Defendants have been dismissed, and the case currently comprises three counts. As enumerated in the § 1915A threshold review order:

> **Count 2:** Defendant Trost denied Plaintiff constitutionally-adequate medical care for *H. pylori* and gastroesophageal reflux disease (GERD);
>
> **Count 3:** Defendants Fitzgerald, Lashbrook and Miner denied Plaintiff access to the courts regarding an interlocutory appeal in Central District (Illinois) case No. 11-1368 (Appeal No. 14-1030); and
>
> **Count 5:** Defendant Fitzgerald subjected Plaintiff to unconstitutional conditions of

1

confinement by not having other inmates give Plaintiff ice during times when his cell was overly hot and muggy.

Defendant Butler is the warden at Menard, and has been named in the case in her official capacity only (*i.e.*, for the purpose of effectuating any prospective injunctive relief).

The case comes before the Court on multiple issues: whether Plaintiff exhausted his administrative remedies, whether injunctive relief should be granted in Plaintiff's favor, and whether the case should be severed into multiple actions.

1. *PLRA Exhaustion — Defendants' Motions for Summary Judgment DENIED*

In separate motions, Defendants Trost (Doc. 44) and Fitzgerald[1] (Doc. 58) moved for summary judgment on the theory that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff raised factual questions as to whether he had been thwarted in attempting to pursue those remedies, so (pursuant to 28 U.S.C. § 636 and the procedure outlined in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)), Magistrate Judge Stephen C. Williams convened a hearing on the matter.

In a Report and Recommendation ("R&R") dated June 19, 2015, Judge Williams found that testimony from both the Plaintiff and IDOC grievance officers was credible, but that Defendants had not adduced enough evidence to carry their burden of showing Plaintiff did not (as they argued) file grievances on the matter. In other words, the evidence

---

[1] Because of her presence as an official-capacity defendant, Butler joined Fitzgerald's motion.

was inconclusive, and a "tie must go to the [P]laintiff." **(Doc. 98, 14 (citing *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007)).**

The parties were notified that, pursuant to § 636 and Local Rule 73.1(b), any objections were due within fourteen days of the R&R's entry. No objections have been filed, so the undersigned need not undertake *de novo* review of Judge Williams' R&R (which is in any event well-reasoned, thorough, and based on the applicable legal principles guiding the exhaustion issue). *See* **28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999).** Accordingly, the undersigned ADOPTS (Doc. 98) in its entirety Judge Williams' Report and Recommendation, and DENIES the summary judgment motions filed by Defendant Trost (Doc. 44) and Defendants Fitzgerald and Butler (Doc. 58).

2. *Plaintiff's Motion for Injunctive Relief — DENIED*

As a preliminary matter, the undersigned will consider supplemental materials filed by Plaintiff (thus GRANTING Doc. 103 and DIRECTING the supplemental information be filed *instanter* by the Clerk's office). Further, the Court GRANTS Plaintiff's motion to strike (Doc. 99) his own arguments aimed at the Clerk of the Court of Appeals, and will not consider such theories. Plaintiff's motion can be grouped into three themes.

First, he seeks an injunction forcing IDOC officials to send him to an outside specialist for his GERD, *H. pylori*, and thyroid issues. *H. pylori*, he argues, is a serious infection which if left untreated could cause stomach or esophageal cancer. He further

asserts that—although medical reports state otherwise—he is not being treated for GERD or hypothyroidism,[2] and that it would be little burden for Defendants to send him to a specialist (and carry out that specialist's orders). Plaintiff further claims that none of the medications prescribed to him has worked, that he still suffers from acid reflux, that a previously helpful medication (Protonix) has been discontinued, and that his new antacid (Mintox) does not help as much as previous medicines did. Finally, Plaintiff says he has asked to be seen by a specialist for five years, and that he continues to have difficulty breathing and to suffer from pain and tightening in his esophagus and stomach.

Secondly, Plaintiff seeks an injunction to stop Defendants from intercepting, delaying, or destroying his mail. He seeks access—denied by Defendants, he says—to his legal boxes and materials and to the law library. He claims numerous documents in this case and in others have been confiscated, to include amended and supplemental complaints and a summary judgment response in this case. He further claims he received a monthly magazine subscription two weeks later than usual, and that Defendants held a state habeas petition for one month before filing it in state court. Finally, Plaintiff claims outgoing mail to family and friends has been intercepted.

Third, Plaintiff seeks injunctive relief against what he concludes is retaliation (for filing this lawsuit) committed by the Defendants. He fails to indicate exactly which Defendant is retaliating against him, but alleges among other things that (1) he was given

---

[2] Plaintiff claims to have tested positive for hypothyroidism in August 2011, and that he was told it required no treatment.

improper disciplinary tickets for intimidation and/or threats, (2) he has been placed in general population (with a "blue I.D." that will prevent his transfer) and labelled a stool pigeon by staff; (3) other prisoners have threatened to kill him. He seeks to be transferred because of the threats, and claims there is a state-wide policy of retaliation directed by the head of the IDOC, Salvador Godinez.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter*, **555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679,**

683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

    A. <u>Medical Treatment</u>

Plaintiff seeks an order from this Court directing Defendants to send him to a specialist and provide proper treatment for his hypothyroidism, GERD, and *H. pylori*.

As to Plaintiff's hypothyroidism, that claim is not currently before the Court. Plaintiff's complaint only alleged that Trost and others were deliberately indifferent to his GERD and H. pylori. His claim did not include the treatment of his hypothyroidism. Thus, Plaintiff's request for injunctive relief related to that condition is unrelated to the current claims before the Court, and must be denied. If Plaintiff seeks to allege that any medical staff were deliberately indifferent to his hypothyroidism, then he will have to file a new claim after exhausting administrative remedies. In addition, the Court notes that Plaintiff alleges that he was diagnosed with hypothyroidism in August 2011 and has not been treated since; but there is no indication Trost was the medical provider who ever saw him for (and ignored) his hypothyroidism.

As to Plaintiff's request regarding GERD and *H. pylori*, the Court finds that Plaintiff has not shown a likelihood of success on the merits. According to the medical records, Plaintiff was diagnosed with *H. pylori* on March 12, 2013 (Doc. 86-1 at p. 1). Plaintiff was then treated for the condition (Doc. 86-2) and tested again on August 13, 2013, at which time he tested negative (Doc. 86-3). Although Plaintiff indicates that he still has H. pylori, there is no credible evidence in available medical records that he is currently suffering from the condition.

As to Plaintiff's GERD, medical records indicate that Plaintiff is being treated for the condition. On April 26, 2014, Plaintiff complained to medical personnel and was provided with Maalox and Mylanta then referred to Dr. Trost (Doc. 86-4). He was also instructed on lifestyle changes in order to prevent acid reflux (*Id*.). Trost saw Plaintiff on May 2, 2014, and prescribed Protonix (Doc. 86-5). Plaintiff was again seen on August 8, 2014 and again prescribed Maalox and Mylanta (Doc. 86-6). He was referred to the doctor yet again on October 7, 2014, at which time he was prescribed Prilosec and Mintox (an antacid) tablets. (Doc. 86-7). Plaintiff subsequently refused to participate in med call line on October 14, 2014, and has not requested to see the doctor since (Doc. 86-8). As of April 2015, he was still prescribed Prilosec and Mintox, but refused to take Mintox in May 2015 (Doc. 86-9, 86-10).

In other words, the record reflects that Trost is treating Plaintiff's GERD symptoms and is trying different medications. Plaintiff is currently on Prilosec and Mintox (although he has refused to take Mintox at some point in May). While Plaintiff may want to be placed

7

on Protonix, he is not entitled to choose specific treatment; nor does a disagreement with the doctor's treatment constitute deliberate indifference, *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997);** *Ciarpaglini v. Saini*, **352 F.3d 328, 331 (7th Cir. 2003).** While Plaintiff does not like the medication choices he is being given, it appears from the medical records that he is being given medication for his GERD. As such, the Court cannot conclude he is likely to succeed on the merits, and will not grant Plaintiff a preliminary injunction on that issue. Insofar as Plaintiff seeks preliminary injunctive relief for his medical concerns, the Court **DENIES** his motion.

### B. Legal Mail

Plaintiff next seeks an injunction prohibiting Defendants from interfering with his mail. He lists numerous documents which (he says) were either confiscated or interrupted by Defendants. He does not indicate which Defendants he believes are confiscating his mail. In any event, the Court finds that Plaintiff is not entitled to injunctive relief because he is not likely to succeed on the merits of his claims. Though Plaintiff claims that Defendants have continued to confiscate his mail since initiating this action, thus denying him access to the courts, the record reflects that he has made timely filings throughout the case. He claims, for example that (unnamed) Defendants intercepted his proposed amended complaint, his response to the motion for summary judgment, and his proposed supplemental complaint. But all of those documents were received by this Court in a timely fashion. There is no indication these documents were confiscated or delayed in any way. While Plaintiff also

8

alleges that his mandamus to state court was confiscated, he also admits that the petition was eventually received and filed by the Court. (That matter is beyond the scope of this case in any event). In short, nothing in the record indicates that documents to this court or other courts are being confiscated by Defendants or prevented from being filed, much less that Plaintiff's access to the court system is being impinged (or who is doing the impinging).

That leaves only the matter of Plaintiff's mail to his friends and family, as well as his claims that magazines are being delayed. Neither assertion, even if true, would necessarily violate the Constitution, neither assertion is part of the instant case, and neither assertion targets any particular Defendant (instead of, for example, the magazine publisher or slow U.S. Mail service) as the source of Plaintiff's complained-of delays. As it concerns his legal (and personal) mail, Plaintiff's motion for injunctive relief must be DENIED.

C. **Miscellaneous Claims**

Plaintiff asks for much miscellaneous relief that is completely unrelated to the claims at the heart of this case. His safety concerns regarding being a known (alleged) stool pigeon in general population, and his concomitant request for a transfer to Pontiac Correctional Center (where protective custody is the norm) will not be addressed during the pendency of this case. In other words, he has zero chance of success on the merits in this case as it pertains to those concerns. Similarly, the purported retaliation by Defendants in the form of disciplinary tickets and phone / commissary tickets revoked is simply not an issue before

the Court. Accordingly, the Court DENIES Plaintiff's request for a transfer, for placement in protective custody, and for reversal of his disciplinary convictions.

Finally, Plaintiff claims he is being denied access to the law library and to his legal materials. Similar matters were the subject of motions to compel that Plaintiff filed previously. Defendants have indicated that Plaintiff was missing two legal boxes, but that those have been located and returned to him. (*See* Doc. 121). Nor is Plaintiff's current assertion detailed enough for the Court to tailor relief in terms of access to e-filing, legal materials, or the law library generally. The prison is not required to provide unlimited access to a law library. **Martin v. Davies, 917 F.2d 226, 240 (7th Cir. 1990).** In the end, the number of filings Plaintiff has managed to file clearly demonstrates he has adequate access to the e-filing system. The Court DENIES his broad motion for more legal access.

3. *Defendants' Motion to Sever — GRANTED IN PART*

Invoking *George v. Smith*, the seminal Seventh Circuit case on the matter, Defendants have moved to sever the three counts in the case into three separate actions. In *George*, the Seventh Circuit opined: "Unrelated claims against different defendants belong in different suits, not only to prevent . . . morass . . . but also to ensure that prisoners pay the required filing fees." **George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).** Plaintiff has not opposed the motion.

Here, as Defendants correctly point out, Count 2 (the deliberate indifference claim against Defendant Trost) is completely unrelated to the mailroom and conditions-of-

10

confinement allegations that respectively make up Count 3 and Count 5. But Defendants ignore the fact that Defendant Fitzgerald is named in both Count 3 and Count 5. Under a liberal reading of the Complaint, Fitzgerald's motive in (allegedly) partaking in mailroom shenanigans and in (allegedly) subjecting Plaintiff to unconstitutional conditions of confinement may be a common issue of fact to both Counts. The Court therefore declines to sever Count 3 from Count 5 at this time.

So Defendant's motion to sever (Doc. 110) is GRANTED IN PART and DENIED IN PART. Count 2 will proceed in this action, and Counts 3 and 5 shall be severed and opened in a new suit (as described below).

## CONCLUSION

For the reasons explained above, the Court:

- ADOPTS (Doc. 98) the Report and Recommendation filed by Magistrate Judge Williams, and DENIES both Defendant Trost's summary judgment motion (Doc. 44) and the motion for summary judgment filed by Defendants Fitzgerald and Butler (Doc. 58);

- GRANTS Plaintiff's motion to strike certain parts of his argument (Doc. 99), GRANTS Plaintiff's motion to consider additional materials (Doc. 103), but DENIES Plaintiff's Motion for Injunctive Relief (Doc. 72); and

- GRANTS IN PART and DENIES IN PART Defendants' motion to sever (Doc. 110).

Count 2—a deliberate indifference claim against Defendant Trost—shall proceed in this Court. (All Defendants except for Trost and Butler, who has been sued in her official capacity only, are dismissed from *this* case).

11

Count 3 and Count 5 shall are hereby SEVERED. The Clerk of Court is DIRECTED to open a new suit (*Talley v. Fitzgerald, Butler, Lashbrook and Miner*) under a new case number, and to file there the following documents from the instant case:

- the Complaint (Doc. 1);
- the Threshold Order (Doc. 6)
- Judge Williams' Order identifying Defendants Lashbrook and Miner (Doc. 81)
- This Memorandum & Order.

Filing fees for the new case will be assessed. The newly-severed case shall, pursuant to District procedure, be randomly assigned to a district judge / magistrate judge pairing.

**IT IS SO ORDERED.**
**DATE: September 17, 2015**                         s/ *Michael J. Reagan*
                                                                        **MICHAEL J. REAGAN**
                                                                        Chief Judge
                                                                        UNITED STATES DISTRICT COURT